Evan J. Smith
BRODSKY SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SCOTT BISHINS,<br><br>                    Plaintiff,<br><br>         vs.<br><br>TREMONT MORTGAGE TRUST, JOHN L. HARRINGTON, MATTHEW P. JORDAN, WILLIAM A. LAMKIN, JOSEPH L. MOREA, ADAM D. PORTNOY, and RMR MORTGAGE TRUST,<br><br>                    Defendants. | Case No.:<br><br>COMPLAINT FOR:<br><br>(1)   Violation of § 14(a) of the Securities Exchange Act of 1934<br>(2)   Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Scott Bishins ("Plaintiff"), by his attorneys, on behalf of himself, files this action against the defendants, and alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

### SUMMARY OF THE ALLEGATIONS

1.     Plaintiff brings this action on behalf of himself against Tremont Mortgage Trust ("TRMT" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants,") for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of the Individual Defendants' efforts to sell the

Company to RMR Mortgage Trust ("RMR" or the "Parent) and its affiliates as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all-stock transaction valued at approximately $54 million (the "Proposed Transaction").

2.       The terms of the Proposed Transaction were memorialized in an April 27, 2021, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement").   Under the terms of the Merger Agreement, TRMT will become an indirect wholly-owned subsidiary of RMR, and TRMT's public stockholders will receive, in exchange for each share of TRMT common stock they own, 0.520 of one newly issued RMR common share. This implied a per share value of $6.55 for TRMT based on RMR's closing price on April 23, 2021 of $12.59 per share.

3.       Thereafter, on June 9, 2021, RMR filed a Registration Statement on Form S-4 (the "Registration Statement") with the SEC in support of the Proposed Transaction.

4.       The Proposed Transaction is also for a number of reasons.  Significantly, the Registration Statement describes a transaction mired by conflicts of interest and resulting in an insufficient process in which the Board failed to initiate a proper market check and in which they only considered a handful of other potentially interested counterparties.

5.       Next, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

6.       In violation of the Exchange Act and in further violation of their fiduciary duties, Defendants caused to be filed the materially deficient Registration Statement on June 9, 2021 with

the SEC in an effort to solicit Plaintiff to vote his TRMT shares in favor of the Proposed Transaction.  The Registration Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in breach of the Defendants' fiduciary duties.  As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for TRMT and RMR, provided by TRMT and RMR to the Company's financial advisor Citigroup Global Markets, Inc. ("Citi") and to RMR's financial advisor, UBS Securities LLC ("UBS"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Citi and UBS and provided to the Board.

7.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.

## PARTIES

8.      Plaintiff is a citizen of Florida, and at all material times, has been a stockholder of TRMT.

9.      TRMT a real estate investment trust (REIT), focuses on originating and investing in first mortgage loans secured by middle market and transitional commercial real estate in the United States. TRMT is incorporated under the laws of the State of Maryland and has its principal place of business located at Two Newton Place, 255 Washington Street, Suite 300, Newton, MA 02458.  Shares of TRMT stock are traded on the Nasdaq Stock Exchange under the symbol "TRMT."

10.    Defendant John L. Harrington ("Harrington") has been an Independent Trustee of the Company at all relevant times.  Notably, Harrington is also an Independent Trustee of RMR and has been at all relevant times, is therefore not "independent" concerning the Proposed Transaction, and thus is present on both sides of the Proposed Transaction.

11.    Defendant Matthew P. Jordan ("Jordan") has been a Managing Trustee of the Company at all relevant times. Notably, Jordan is also a Managing Trustee of RMR and has been at all relevant times, and thus is present on both sides of the Proposed Transaction.

12.    Defendant William A. Lamkin ("Lamkin") has been an Independent Trustee of the Company at all relevant times.

13.    Defendant Joseph L. Morea ("Morea") has been an Independent Trustee of the Company at all relevant times.  Notably, Morea was also previously an Independent Trustee of RMR, is therefore not "independent" concerning the Proposed Transaction, and thus is effectively present on both sides of the Proposed Transaction.

14.    Defendant Adam D. Portnoy ("Portnoy") has been a Managing Trustee of the Company at all relevant times.  Notably, Portnoy is also a Managing Trustee of RMR and has been at all relevant times, and thus is present on both sides of the Proposed Transaction

15.    The Defendants identified in ¶¶ 10-14, above, are sometimes collectively referred to herein as the "Individual Defendants".

16.    Defendant RMR a real estate finance company, focuses on originating and investing in first mortgage whole loans secured by middle market and transitional commercial real estate.  The company is headquartered in Newton, Massachusetts.  Shares of RMR common stock are traded on the Nasdaq Stock Exchange under the ticker symbol "RMRM."

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

18.     Personal jurisdiction exists over each defendant either because the defendants are incorporated in this District, conduct business in or maintain operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District and TRMT stock is traded on the Nasdaq Stock Exchange which is located in this District.

## SUBSTANTIVE ALLEGATIONS

***Company Background***

20.     TRMT focuses on originating and investing in first mortgage loans secured by middle market and transitional commercial real estate in the United States. The Company qualifies as a REIT for federal income tax purposes. TRMT was founded in 2017 and is headquartered in Newton, Massachusetts.

21.     The Company's most recent financial performance press release before the announcement of the Proposed Transaction indicated sustained and solid financial performance. For example, in a February 19, 2021 press release announcing its Fourth Quarter 2020 financial

results, the Company highlighted such milestones as $2.2 million, or $0.26 per diluted share, compared to net income of $1.3 million, or $0.16 per diluted share, for the same quarter last year.

22.     Speaking on these positive results, TRMT President Thomas Lorenzini, stated, "We reported solid fourth quarter and full year 2020 results that reflect our proactive measures over the past year to preserve liquidity, enhance the stability of our balance sheet and actively manage our loans. During the fourth quarter our portfolio's overall performance improved further, as we upgraded the risk ratings of two loans based upon continued improvement of the underlying collateral. We are also pleased that all of our loans continue to remain current on debt service. Looking ahead, given the performance of our portfolio, we plan to reinstate our regular quarterly distribution and to announce the amount of the new distribution in April 2021."

23.     Since the announcement of the Proposed Transaction, RMR's per share price has fluctuated significantly and has recently traded as low as $11.75 per share, which would translate into a merger consideration of only approximately $6.11 per share. The fact that the Proposed Transaction does not guarantee TRMT's public stockholders protection from such fluctuations in RMR's per share price seems to be of no concern to the Defendants.

***The Flawed Sales Process***

24.     As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants, and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

25.     First and foremost, the Registration Statement reveals that the majority of the Board either are currently serving on the RMR Board or have in the near past. Specifically, the Registration Statement reveals that Defendants Portnoy and Jordan serve as managing trustees of

both TRMT and RMR, that Defendant Harrington serves as an independent trustee on both the TRMT and RMR boards, and that Defendant Morea currently serves as an independent trustee of TRMT and formerly served as an independent trustee of the RMR Board.

26.     This is especially problematic because the TRMT special committee created to direct the sales process was composed of only Defendants Lamkin and Morea, the latter of whom, like the rest of the Board save Defendant Lamkin, was conflicted and had connections on both sides of the Transaction. Clearly such as special committee could not have been "independent."

27.     Further, the Registration Statement fails to indicate if a market check for potentially interested third parties was conducted at any point during the sales process by the Board, or anyone on its behalf.

28.     The Registration Statement does not provide adequate information as to why the Board agreed to the merger consideration without the protections of a collar mechanism to keep the merger consideration within a reasonable range.

29.     In addition, the Registration Statement is silent as to the nature of the confidentiality agreement entered into between the Company and RMR, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Registration Statement, and if so in what way and the specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions, and if so, the specific conditions, if any, under which such provisions would fall away.

30.     It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

*The Proposed Transaction*

31.     On April 26, 2021, TRMT and RMR issued a press release announcing the

Proposed Transaction.  The press release stated, in relevant part:

> **Newton, MA (April 26, 2021):** RMR Mortgage Trust (Nasdaq: RMRM) and
> Tremont Mortgage Trust (Nasdaq: TRMT) today announced that they have entered
> into a definitive merger agreement pursuant to which TRMT will merge with and
> into RMRM, with RMRM continuing as the surviving company. The merger is
> expected to create a more diversified commercial mortgage real estate investment
> trust, or REIT, focused on middle market transitional bridge loans with assets
> expected to approach $1 billion when fully invested. The merger is expected to be
> accretive to distributable earnings in 2022 with the potential to realize annual
> expense savings of $1.4 million to $1.6 million, or $0.10 to $0.11 per common
> share, due to the elimination of certain duplicative public company costs.

> Tom Lorenzini, President of RMRM and TRMT, made the following statement:

> "We are excited to announce this merger of two highly complementary businesses
> that will create a larger, more diversified commercial mortgage REIT. This
> combination greatly enhances our financial strength and provides attractive benefits
> to the shareholders of both companies. We believe that with increased scale and an
> expanded capital base the combined company will be much better positioned to
> access capital markets, increase operating efficiency, and deliver more attractive
> risk-adjusted returns for our shareholders."

> Under the terms of the merger agreement, each TRMT common share will be
> converted into 0.520 of one newly issued RMRM common share. Based on the
> closing prices of RMRM's and TRMT's common shares on Friday, April 23, 2021,
> the implied offer price is approximately $6.55 per TRMT common share, which
> represents a premium of 6% and 9% to the closing price and the volume weighted
> average price, respectively, for the 30 trading days ending on April 23, 2021. Upon
> the closing of the merger, RMRM shareholders are expected to own approximately
> 70% of the combined company's outstanding common shares, while TRMT
> shareholders are expected to own approximately 30% of the combined company's
> outstanding common shares.

> Based on the closing price of RMRM's common shares on April 23, 2021, the
> equity market capitalization of the combined company would be approximately
> $180 million. Tremont Realty Advisors LLC, the manager of RMRM and TRMT,
> or the Manager, will continue to manage the combined company and has waived
> any termination fee that would otherwise be payable by TRMT as a result of the
> merger.

On a pro forma basis as of today, the combined company will have a loan portfolio consisting of the following characteristics:

·     22 first mortgage loans with aggregate loan commitments of $519 million;
·     Average funded loan size of $21 million;
·     Weighted average maximum maturity, which assumes all borrower extension options have been exercised, of 3.2 years; and
·     Weighted average interest rate of LIBOR plus 3.91% and a weighted average loan-to-value of 66%.

The merger and other transactions contemplated by the merger agreement and the terms thereof were evaluated, negotiated and recommended, as applicable to each of RMRM's and TRMT's board of trustees by special committees of each of RMRM's and TRMT's board of trustees, respectively, each comprised solely of RMRM's and TRMT's disinterested, independent trustees, respectively, and were separately unanimously approved and adopted by RMRM's and TRMT's independent trustees and by RMRM's and TRMT's board of trustees, with independent trustees unanimously approving the merger and other transactions contemplated by the merger agreement.

The merger is expected to close during the third quarter of 2021, subject to the requisite approvals by RMRM and TRMT shareholders and other customary closing conditions. RMRM's greater than 5% shareholder has agreed to vote in favor of the issuance of common shares in the merger at RMRM's special meeting of shareholders. TRMT's greater than 5% shareholder has agreed to vote in favor of the merger and other transactions contemplated by the merger agreement at TRMT's special meeting of shareholders.

***Potential Conflicts of Interest***

32.    The breakdown of the benefits of the deal indicate that TRMT insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of TRMT.

33.    Notably, Company insiders, currently own large, illiquid portions of Company stock that will be exchanged for the merger consideration upon the consummation of the Proposed Transaction. However, while the Registration Statement provides the following, it fails to provide

an accounting of the merger consideration such holdings will be exchanged for upon the consummation of the Proposed Transaction:

| Name of Beneficial Owner(1) | Number of TRMT Common Shares Beneficially Owned(2) | Percent of Class(3) |
|---|---|---|
| Adam D. Portnoy | 1,613,600(4) | 19.4% |
| David M. Blackman(5) | 28,887 | Less than 1% |
| Joseph L. Morea | 23,500 | Less than 1% |
| G. Douglas Lanois | 19,341 | Less than 1% |
| Matthew P. Jordan | 17,717 | Less than 1% |
| John L. Harrington | 13,500(6) | Less than 1% |
| William A. Lamkin | 6,000(7) | Less than 1% |
| Thomas J. Lorenzini | 2,136.67 | Less than 1% |
| All Trustees and executive officers as a group (seven persons) | 1,695,794.67 | 20.4% |

34.     Moreover, upon the consummation of the Proposed Transaction, the Registration Statement indicates that each outstanding Company stock option, restricted share, or other equity award will be canceled and converted into the right to receive certain consideration according to the merger agreement.  However, the Registration Statement fails to provide an accounting of such awards or the merger consideration such holdings will be exchanged for upon the consummation of the Proposed Transaction.

35.     In addition, the Registration Statement fails to provide adequate information regarding any employment agreements with any TRMT executives that entitle such executives to severance packages should their employment be terminated under certain circumstances.  If such

'golden parachute' packages exist they will grant each director or officer entitled to them significant compensation not shared by Plaintiff.

36.     The Registration Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders

37.     Thus, while the Proposed Transaction is not in the best interests of TRMT, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Registration Statement***

38.     On June 4, 2021, the TRMT Board and RMR caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation their fiduciary duties, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

39.     Specifically, the Registration Statement fails to provide material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Registration Statement fails to disclose

a. Adequate information regarding the conflicted nature of the majority of the TRMT Board, including the TRMT Special Committee, and their ties to RMR, including what specific steps were taken to ensure that these conflicts were adequately addressed;

b. The specific reasoning as to why no market check for potentially interested third parties was conducted by the Board or anyone on its behalf throughout the sales process;

c. Whether the confidentiality agreements entered into by the Company with RMR differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties, and if so, in what way;

d. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including RMR, would fall away;

e. The specific reasoning as to why the Board agreed to the merger consideration without the protections of a collar mechanism to keep the merger consideration within a reasonable range;

f.   Whether any change-in-control agreements will grant any TRMT Director a "Golden Parachute" payment upon the consummation of the Proposed Transaction, and the specific amount of consideration contemplated;

g.   Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning TRMT's Financial Projections*

40.   The Registration Statement fails to provide material information concerning financial projections provided by TRMT management and relied upon by Citi and UBS in their analyses.  The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading.

41.   As such, the Registration Statement should have, but fails to provide, certain information in the projections that TRMT and/or RMR management provided to the Board, Citi, and UBS.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

42.     With regard to the "*TRMT Standalone Income Statement Projections*" the Registration Statement fails to disclose:

     a.   The total share count utilized;

     b.   All specific adjustments made and the reasons underlying these adjustments.

43.     With regard to the "*TRMT Standalone Balance Sheet Projections*" the Registration Statement fails to disclose:

     a.   All specific adjustments made and the reasons underlying these adjustments;

44.     The Registration Statement fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized.

45.     This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

46.     Without accurate projection data presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Citi or UBS's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has breached their fiduciary duties by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning RMR's Financial Projections*

47.     The Registration Statement fails to provide material information concerning RMR's financial projections provided by RMR management and relied upon by Citi and UBS in

their analyses.  The Registration Statement discloses financial projections for RMR which are materially misleading.

48.    The Registration Statement should have, but fails to provide, certain information in the projections that RMR management provided to the Board, Citi, and UBS regarding RMR's projected financial information.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

49.    With regard to the "*RMR Standalone Income Statement Projections*" the Registration Statement fails to disclose:

> c.   The total share count utilized;
>
> d.   All specific adjustments made and the reasons underlying these adjustments.

50.    With regard to the "*RMR Standalone Balance Sheet Projections*" the Registration Statement fails to disclose:

> b.   All specific adjustments made and the reasons underlying these adjustments;

51.    The Registration Statement fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized.

52.    This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

53.     Without accurate projection data presented in the Registration Statement, Plaintiff is unable to properly evaluate the RMR's true worth, the value of the merger consideration, the accuracy of Citi or UBS's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has breached their fiduciary duties by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Citi*

54.     In the Registration Statement, Citi describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

55.     With respect to the *Dividend Discount Analysis* for TRMT, the Registration Statement fails to disclose:

     a.   The implied TRMT's terminal values calculated;

     b.   The specific inputs and assumptions used to determine the utilized range of BVPS multiples of 0.90x to 1.10x; and

     c.   The specific inputs and assumptions used to determine the utilized discount rate range of 22.2% to 30.0%.

56.     With respect to the *Dividend Discount Analysis* for RMR, the Registration Statement fails to disclose:

     a.   The implied RMR's terminal values calculated;

     b.   The specific inputs and assumptions used to determine the utilized range of BVPS multiples of 0.90x to 1.10x; and

c. The specific inputs and assumptions used to determine the utilized discount rate range of 17.7% to 25.4%.

57. With respect to the *Selected Public Companies Analysis* for TRMT, the Registration Statement fails to disclose:

a. The specific multiples for each comparable company;

b. The specific inputs and assumptions used to determine the utilized selected ranges of BVPS multiples of 0.61x to 1.49x and calendar year 2021 and calendar year 2022 estimated adjusted distributable EPS multiples of 10.2x to 23.3x and 9.8x to 13.9x, respectively, to BVPS (as of December 31, 2020) and calendar year 2021 and calendar year 2022 estimated adjusted distributable EPS of TRMT;

58. With respect to the *Selected Public Companies Analysis* for RMR, the Registration Statement fails to disclose:

a. The specific multiples for each comparable company;

b. The specific inputs and assumptions used to determine the utilized selected ranges of BVPS multiples of 0.61x to 1.49x and calendar year 2021 and calendar year 2022 estimated adjusted distributable EPS multiples of 10.2x to 23.3x and 9.8x to 13.9x, respectively, to BVPS (as of December 31, 2020) and calendar year 2021 and calendar year 2022 estimated adjusted distributable EPS of RMR;

59. With respect to the *Selected Precedent Transaction Analysis*, the Registration Statement fails to disclose:

a. The specific date on which the selected transactions closed;

    b.  The value of each selected transaction; and

    c.  The specific inputs and assumptions used to determine the utilized selected range of BVPS multiples of 0.65x to 1.10x to BVPS (as of December 31, 2020) of TRMT.

60.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

61.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public TRMT stockholder. As such, the Board has breached their fiduciary duties by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by UBS*

62.    In the Registration Statement, UBS describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

63.    With respect to the *RMRM Selected Public Companies Analysis*, the Registration Statement fails to disclose:

    a.  The specific multiples for each comparable company; and

    b.  The value for RMR calculated.

64.     With respect to the *TRMT Selected Public Companies Analysis*, the Registration Statement fails to disclose:

      a.  The specific multiples for each comparable company; and

      b.  The value for TRMT calculated.

65.     With respect to the *Selected Precedent Transactions Analysis*, the Registration Statement fails to disclose:

      a.  The specific multiples for each precedent transaction;

      b.  The specific date on which the selected transactions closed;

      c.  The value of each selected transaction;

      d.  The value for RMR calculated; and

      e.  The value for TRMT calculated.

66.     With respect to the *Leveraged Discount Cash Flow Analysis* for RMR, the Registration Statement fails to disclose:

      a.  The present value of the distributable cash flows that RMR was forecasted to generate during the second quarter of RMR's fiscal year ending December 31, 2021;

      b.  The terminal values for RMR calculated;

      c.  The specific range of multiples to RMR's Terminal Book Value Per Share applied, and the inputs and assumptions underlying this range; and

      d.  The specific inputs and assumptions used to calculate the utilized discount rate range of 15.0% to 19.0%.

67.     With respect to the *Leveraged Discount Cash Flow Analysis* for TRMT, the Registration Statement fails to disclose:

a.  The present value of the distributable cash flows that TRMT was forecasted to generate during the second quarter of TRMT's fiscal year ending December 31, 2021, through the full fiscal year ending December 31, 2025;

b.  The terminal values for TRMT calculated;

c.  The specific range of multiples to TRMT's Terminal Book Value Per Share applied, and the inputs and assumptions underlying this range; and

d.  The specific inputs and assumptions used to calculate the utilized discount rate range of 15.0% to 19.0%.

68.   These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

69.   Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public TRMT stockholder. As such, the Board has breached their fiduciary duties by failing to include such information in the Registration Statement.

## FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

## (Against All Defendants)

70.   Plaintiff repeats all previous allegations as if set forth in full herein.

71.   Defendants have disseminated the Registration Statement with the intention of soliciting Plaintiff to vote his shares in favor of the Proposed Transaction.

72.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title.

73.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

74.     The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

75.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

76.     The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

77.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of this entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against All Individual Defendants)

78.     Plaintiff repeats all previous allegations as if set forth in full herein.

79.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff.

80.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved,

ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

81.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of TRMT's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from the Company's stockholders, including Plaintiff, and that the Registration Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

82.     The Individual Defendants acted as controlling persons of TRMT within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause TRMT to engage in the wrongful conduct complained of herein. The Individual Defendants controlled TRMT and all of its employees. As alleged above, TRMT is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demand judgment against Defendants jointly and severally, and equitable and injunctive relief, in Plaintiff's favor and against defendants as follows:

A.      Declaring and decreeing that the Merger Agreement was entered into in breach of the fiduciary duties of Defendants and is therefore unlawful and unenforceable;

B.      Enjoining defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Transaction, unless and until the Company issues a complete and non-misleading Registration Statement;

C.      Rescinding, to the extent already implemented, the Proposed Transaction or any of the terms thereof and in the event the transaction is consummated prior to the entry of this court's final judgment, rescinding it and awarding rescissory damages;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

E.      Granting any other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: June 21, 2021                    **BRODSKY SMITH**

By: _____
Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*